## WILSON *vs.* KING and others.

1. An alleged parol assumption of a mortgage upon the premises, claimed to have been made at the time of their conveyance, *held* not proved.

2. A mortgage conveying only an estate for the life of the mortgagee, will not be reformed to convey a fee, as against the rights of a *bona fide* purchaser of the mortgaged premises for valuable consideration, without evidence of actual notice on the part of the purchaser, more extensive than the record of the mortgage itself.

3. Mortgages of real estate are usually in fee, but constructive notice of the existence, merely, of a mortgage, with no notice as to the estate it is intended to mortgage, will not be notice that the mortgage is in fee, if its terms convey a life estate only.

Wilson *v.* King.

On final hearing on pleadings and proofs.

*Mr. W. S. Whitehead,* for complainant.

*Mr. J. H. Stone,* for defendant John King.

THE CHANCELLOR.

The complainant is the holder of a mortgage given to Harriet H. Woodward for $500 and interest, on land in Newark, assigned to him by Ford and wife, two of the defendants, to the latter of whom it belonged at the time of the assignment. She received it by assignment from the mortgagee. When the mortgage was made, the premises were owned by Ford, who was then unmarried. Previously to the assignment to Mrs. Ford, her husband sold and conveyed the property in fee to the defendant King, she joining with him in the deed. The mortgage was executed and delivered in the city of New York. It contains no words of inheritance, and therefore conveys only an estate for the life of the mortgagee. She is still living. The bill is filed to reform the mortgage by the addition of words of inheritance, so as to convey a fee, and for foreclosure and sale of the premises. It also seeks a personal decree for deficiency against King, on the ground that he, on the conveyance to him, assumed the payment of the mortgage. King, after he became the owner of the property, conveyed part of it to the corporation of the city of Newark, who are also defendants. Both he and they demurred to the bill. The demurrers, however, were withdrawn, and King answered. The bill was taken as confessed as against the corporation. King, in his answer, not only denies that he assumed the payment of the mortgage, but declares that he never knew of the existence of it until after the former suit upon it (*Wilson* v. *King,* 8 *C. E. Green* 150,) was commenced against him. No mention of the mortgage is made in the deed to him. It contains covenants against encumbrances of seizin, for quiet enjoyment, for further assurance, and of warranty. The evidence

relied on for a decree for deficiency, is the testimony of Mr. Wetmore, who was Ford's legal adviser at the time of the conveyance. He says that King, who was a creditor of Ford who had then just failed in business, was anxious to obtain a conveyance of this property, in consideration of his debt, which appears, by King's testimony, to have been about $3000, not including interest. The witness says that he objected to Ford's conveying the property to King, on two grounds : first, because, seeing that Ford had just failed in business, it might, as a seeming preference, offend his other creditors; and next, because the mortgage in question was upon it, and he did not think the property, as it was represented to him by Ford, was of sufficient value to pay the mortgage. He adds that Ford represented it to him as being located in the outskirts of the city of Newark, and covered with water, and of little or no value. He says that Ford also told King about the mortgage and the condition of the property, and that Ford, under his instructions, refused to give a deed at that time; that King then left the witness' office, where the conversation was held, and appeared to be very angry with the witness because of his advice to Ford, but returned again in the afternoon of the same day, and urged that the deed should be made to him, and said that if Ford would make it, he would discharge him from his indebtedness and assume the mortgage of $500. The witness says he still advised Ford not to give the deed, and Ford did not do so at that time, and that King again left the office very angry, and that Ford and the witness walked up town together. He subsequently says that he thinks he had another interview with Ford and King, a day or two after that, and was informed by them that Ford had made a deed to King, as the latter had requested. It will be seen that this testimony does not prove that King assumed the payment of the mortgage. At most, it proves an offer of King to do so, which was not then accepted. As to the interview subsequent to the offer, the witness does not speak positively. He merely says he thinks it took place. The witness was not

present when the conveyance was made, nor did he take any part in that transaction. Ford, who was a witness in the cause, does not corroborate him. He does not say that King assumed the payment of the mortgage, or offered to do so. He says he supposed the property was conveyed to King, subject to the mortgage, and that he informed King of the existence of the mortgage before the conveyance; that his wife and Mr. Wetmore were present, and that when he conveyed the property to King, the latter asked him if that was the only mortgage on the property, and he told him that that was all, and he seemed to be satisfied. Mrs. Ford appears, from her testimony, to have been present at no conversation between her husband and King, except that which took place when the deed was executed. She says that then King and Ford conversed some time in reference to the sale of the property, before the deed was signed, and that her husband then told King that there was a mortgage on the property. Mr. Wetmore is wholly uncorroborated in his statement as to the offer which he says was made by King to assume the mortgage. To fix the assumption upon the latter, the proof should go further than his statement goes. It may be remarked that it is difficult to perceive the reason why Mr. Wetmore should have advised Ford not to make a conveyance of a worthless lot of land to a creditor who not only requested, but urgently solicited it, and was not only willing to give up for it his claim of about $3000, but offered to assume the payment of a mortgage of $500, and interest upon it, in addition. On the other hand, it is difficult to perceive any reason why King should have made any such proposition. He denies, *in toto*, the statement of Mr. Wetmore, and says he was never in his office, and never saw him. He says he never had any conversation in reference to the title of the property, except that which took place in his (King's) office, in Broadway; that Ford offered him the property in discharge of his indebtedness, assuring him that the title was perfect and the property free of encumbrance; that he was ignorant of the value of the property, but Ford told him it was situated in Newark,

and was worth half of the indebtedness, and in time would
pay it in full; that he accepted the offer, subject to the
approval of his lawyer; that Ford had the conveyance pre-
pared by his own lawyer, and brought it to him the next
day; that he (King) then requested him to leave the deed
with him for an hour, in order that he might submit it to his
lawyer; that Ford replied that there was no necessity for
taking it to a lawyer, repeating his assurance in reference to
the title; that he did, however, retain the deed, and sub-
mitted it to his lawyer, who approved it; that Mr. and Mrs.
Ford were with him at the office where the deed was exe-
cuted, and that that was the only time he ever saw the latter.
He further says that he gave up to Ford, as consideration
for the deed, the notes he held against him for the indebted-
ness, and that he had given full value for them. His narra-
tive has more of verisimilitude than that of Mr. Wetmore.
Besides, the deed, as before stated, conveys the property free
from encumbrance.  There are no grounds for a decree
against King for deficiency.  Nor will the mortgage be
reformed.  He is a *bona fide* purchaser for valuable consid-
eration.  The record was constructive notice to him.  The
mortgage there recorded purported to convey only an estate
for the life of the mortgagee, and there is no evidence
of actual notice more extensive than that of the mortgage
itself.  The facts relied upon as the grounds on which a
decree reforming the mortgage may be based, are that the
mortgage was made in New York, where its language would
import a conveyance in fee, and that Ford and King both
resided in New York, and therefore may be presumed to
have understood, by the term mortgage, a mortgage in fee.
But the fact is, that neither of these parties knew anything
about the language of the mortgage, or about the law of New
York on the subject.  Mortgages of real estate are usually
in fee, but constructive notice of the existence, merely, of a
mortgage, with no notice as to the estate it is intended to
mortgage, will not be notice that the mortgage is in fee, if its
terms convey a life estate only.  King had notice of the

existence of a mortgage, but no notice as to the estate intended to be mortgaged thereby, beyond the import of the terms employed in the instrument. He could not have had notice of any mistake in the mortgage, for it was not until after the conveyance was made to him that it was alleged that there was a mistake. There will be a decree in accordance with the views above expressed.